Marshal Shichtman, Esq. (MDS 4012)
Marshal Shichtman & Associates, P.C.
1 Old Country Road
Suite 120
Carle Place, New York 11514
Tel 516.741.5222
Fax 516.741.5212

**Attorney for Plaintiffs: Phillip Burkhardt & Elsie Burkhardt**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT FOR NEW YORK

-------------------------------------------------------------------------x   Hon. J._____

Phillip Burkhardt & Elsie Burkhardt

                                                        **SUMMONS &**
                                                        **COMPLAINT**

                                        Plaintiff(s),

                                                        Index No.
        -against-                                       _____

AuctionDiner.com f/k/a BidBay.com, George Tannous
& Affiliates, Inc., George Tannous, Jon Montgomery,
Wester S. Cooley, L. Yvonne Hoek, Mike Burman,

                                        Defendant(s)
-------------------------------------------------------------------------x

Plaintiff Phillip Burkhardt and Elsie Burkhardt, by and through their attorney Marshal
Shichtman, for their Complaint hereby alleges as follows:

<u>JURISDICTION</u>

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C.A. §1332, as
    there is diversity between the Plaintiffs and Defendants and the amount in
    controversy exceeds $75,000.

    a.  Plaintiffs are domiciled in the State of New York, County of Suffolk,
        having their domicile at 7 Roundtree Drive, Melville, New York 11747;

    b.  Defendant AuctionDiner.com maintains a place of business at 9911
        Commerce Avenue, Tujunaga, California 91042 as listed with the

Securities and Exchange Commission and a letterhead address of 7209 Foothill Boulevard, Tujunaga, California 91042;

c.  Defendant BidBay.com maintains a place of business at 9925 Commerce Avenue, Tujinaga, California 91402; and a regional office at 7209 Foothill Boulevard, Tujunaga, California 91042;

d.  Defendant George Tannous & Affiliates, Inc. maintains a regional office at 7209 Foothill Boulevard, Tujunaga, California, 91042; and a letterhead address of 9911 Commerce Avenue, Tujunaga, California 91042;

e.  Defendant George Tannous is believed to be a resident of California with a business addresses aforementioned;

f.  Defendant Jon Montgomery is believed to be a resident of California with a business address of 9925 Commerce Avenue, Tujinaga, California 91402.

g.  Defendant Wester S. Cooley, United States Congressman, Retired, is believed to be a resident of the State of Oregon.  His current residence is unknown.

h.  Defendant L. Yvonne Hoek is believed to be a resident of California.  Her current whereabouts are unknown.

i.  Defendant Michael Burman is believed to be a resident of California, with an address of 401 North Brand Boulevard, No. 540, Glendale, California 91203;

j.  Defendant Jerry Lambert is believed to be a resident of California.  His current whereabouts are unknown.

2. This Court has jurisdiction over this matter under the Federal Questions of violations of the Securities Act and the Exchange Act, pursuant to exclusive jurisdiction of Federal Courts set forth in 15 U.S.C.A. §77v (Securities Act §25) and 15 U.S.C.A. 78aa (Exchange Act §27).

## VENUE

3. Plaintiffs Phillip & Elsie Burkhardt are domiciled in the State of New York, County of Suffolk, the Eastern District of New York.

## DEFINITIONS

4. Issue – also Issuance, any stock given by AuctionDiner.com f/k/a BidBay.com and George Tannous & Affiliates, Inc.

5. Securities Act – The Securities and Exchange Act of 1933

6. Exchange Act – The Securities and Exchange Act of 1934

7. Listed Exchange – any nationally listed exchange for the purpose of transacting securities (e.g. NYSE, NASDAQ, OTCBB, OTCPK, etc.)

8. Negotiable Securities – Securities that are freely tradeable on a listed exchange.

## ALLEGATIONS

9. Plaintiff Phillip and Elise Burkhardt (Collectively "the Burkhardts") are retired and at no times contemplated here received $200,000 in income individually or $300,000 combined income during the two years prior to the time contemplated herein, nor had assets of $1,000,000 at the time of the purchases.  Plaintiff Philip

Burkhardt was born on November 5th, 1924 and is 79 years of age at the time of this complaint.

10. The Burkhardts at all times contemplated herein were domiciled in the State of New York, County of Suffolk.

11. The Burkhardts never left the County of Suffolk, State of New York to negotiate and consummate the transactions with any of the Defendants.  All correspondence and transactions took place telephonically, by conventional mail, email, and interstate wire transfers.

12. On or about May of 2001, the Burkhardts were contacted by Defendant Jon Montgomery regarding the purchase of securities of Defendant BidBay.com issue of securities and his subsequent solicitation thereof to the Burkhardts to purchase said securities.

13. Defendant Montgomery held himself out to be an agent of BidBay.com and stated such during conversations with Plaintiff Phillip Burkhardt.

14. During such conversations, Defendant Montgomery identified Defendant George Tannous as being the Chief Executive Officer of Defendant BidBay.com and orchestrating the sale of Defendant BidBay.com's Issue.

15. Defendant George Tannous also identified himself as the CEO of Defendant AuctionDiner.com f/k/a Defendant BidBay.com. (see Exhibit A)

16. Defendant Montgomery is presumed to also be an agent of Defendant BidBay.com's alleged successor Defendant AuctionDiner.com.    Defendant Montgomery engaged in numerous conversations with Plaintiff Phillip Burkardt from May 2001 to late February/ early March 2004.

17. During these conversations between Defendant Montgomery and Plaintiff Phillip Burkhardt, Plaintiff Phillip Burkhardt disclosed to Defendant Montgomery that Plaintiff P. Burkhardt was retired and living on a fixed income; thus they could not be an accredited investor(s).

18. Defendant Montgomery persisted in his solicitation of Plaintiff Philip Burhardt to purchase securities of BidBay.com.

19. During his solicitations, Defendant Montgomery made material misstatements representing that the Issue would soon be going public.  Defendant Montgomery represented that the Defendant BidBay.com's stock (hereinafter "Issue") would go public shortly in-between $10 and $20 per share of common stock.

20. The Issue has not materially not gone public. By saying that, it is meant that George Tannous & Affiliates never went public, and BidBay.com (n/k/a AuctionDiner.com) did file registration documents, but later withdrew them.

21. Defendant Montgomery further represented that the founding shares of BidBay.com (n/k/a AuctionDiner) would convert to the public Issue, BidBay.com (n/k/a AuctionDiner.com) at a 20:1 ratio.

22. The Burkhardts received phone calls from Defendant Montgomery almost every week. Each phone call from Defendant Montgomery was a solicitation to purchase shares of the Issue.

23. Plaintiffs Phillip and Elsie Burkhardt then agreed to purchase shares of Defendant BidBay.com's common stock upon Defendant Montgomery's persuasion.

24. Defendant Wester S. Cooley, US Congressman, Retired, then spoke with Plaintiff P. Burkhardt on or about the middle of July 2001. Defendant Cooley represented that he was a principal of BidBay.com. Subsequent letters supported this representation. (*see* Exhibit A) Defendant Cooley represented that indeed BidBay.com would go public and confirmed the information from Defendant Montgomery.

25. Defendant Montgomery confirmed that Defendant Cooley was a principal of BidBay.com. Defendant Cooley apparently authorized Defendant Montgomery as agent for BidBay.com.

26. During the solicitation of the Burkhardts, no prospectus, subscription agreement nor an investor's rights package was sent on BidBay.com or AuctionDiner.com to the Burkhardts.

27. The Burkhardts received a prospectus and subscription agreement for BidBayEurope.com, which they were told was an equivalent to the BidBay.com offering (*see* Exhibit B).

28. In between December 2001 and February 2002, the Burkhardts received common shares of George Tannous & Affiliates, Inc. with the understanding that the George Tannous & Affiliates, Inc. stock would be convertible into shares of BidBay.com at a ratio of 3:1. The Burkhardts received common shares of BidBay as well.

29. In total, the Burkhardts now possess, through various purchases totaling $240,000 (see Exhibit C), 257,000 shares of BidBay.com and 10,084 shares of George Tannous & Affiliates, Inc (see Exhibit D). Both issues of George Tannous & Affiliates, Inc. and BidBay.com certificates bore no CUSIP number, no Transfer Agent inscription, nor any restrictive legend. (*see* Exhibit D).

30. Said shares are all unrestricted stock purchased in a nonpublic offering.

31. Contemporaneously and subsequent to the purchases, L. Yvonne Hoek, the Executive Vice-President of AuctionDiner.com f/k/a BidBay.com, sent letters to the Burkhardts assuring the Burkhardts of the veracity of the transaction (*see* Exhibit E )

32. Under information and belief, on or about late February 2002, BidBay.com changed its name to AuctionDiner.com in a dispute with eBay.com over trademark infringement.

33. Upon information and belief, Defendant Michael Burman took over BidBay.com from Defendant George Tannous.

34. On or about late February early March 2004 Defendant Jerry Lambert contacted the Burkhardts, speaking for Defendant Michael Berman, stating that it was necessary to convert all of the Burkhardt shares into BidBay.com shares. During the same conversation, Defendant Lambert solicited the Burkhardts to purchase more shares.

35. On April 5th, 2004, the Burkhardts attempted to contact BidBay.com and George Tannous & Affiliates, Inc., but the telephone number was disconnected.

36. As of the date of filing, no record can be found of BidBay.com or AuctionDiner.com on any Listed Exchange (*see* Exhibit F).

37. Due to Securities violations, which included the denial of registration in Utah and Pennsylvania (*see* Exhibit G, at page 27). Defendants offered rescission of certain transactions due to known violations of Securities Laws (*see* Exhibit G, at page 12, 13, 28-30).

38. The Burkhardts were never offered rescission for the shares they purchased.

39. Defendants admitted, in a Federal Securities filing (Form SB2/A version 6, aka Exhibit G), that securities were sold to nonqualified investors (*see* Exhibit G, at page 28)

40. Defendants then withdrew the filing of the registration statement (SB2) (*see* Exhibit H).

41. Defendants then sold off assets of Defendant BidBay.com n/k/a Defendant AuctionDiner.com to Defendant Cooley (*see* Exhibit I)

42. Defendants then attempted to reregister the Issue under Form 8A, incorporating a withdrawn SB2. (*see* Exhibit J)

## AS AND FOR A FIRST CAUSE OF ACTION: SECURITIES FRAUD
### AGAINST ALL DEFENDANTS

43. Plaintiffs reassert and realleges paragraphs 1-42 as if fully set forth herein.

44. Defendants made false representations to the Burkhardts. Defendants repeatedly stated the Issue was about to go public. Defendants further stated that there was nothing wrong and nothing to be concerned about.

45. The Defendants knew that said statements were false. The Defendants knew that there were material violations of the Issuance, as evidenced by the Pennsylvania and Utah States Securities Department's revoking and barring any registration by the issuer (BidBay.com n/k/a AuctionDiner.com). Defendants also knew of at least two law suits brought by other Defendants for similar circumstances[1].

46. These statements were made by the Defendants to induce the Burkhardts to purchase the Issuance.

47. The Burkhardts justifiably relied upon these statements as material inducements to the purchase.

48. The Burkhardts have suffered damages as a result of their reliance upon the Defendants statements. The Burkhardts gave approximately $240,000 to the Defendants in exchange for what they believed to be Negotiable Securities, when in fact the issue never went public.

---

[1] *see* Rosenberg v. BidBay, et al, 2000 CV 11399, Central District of California; Rosenberg v. BidBay, et al, 2000 CV 00223, Southern District of Mississippi; Rotskoff, et al v. BidBay, et al, 2002 CV 00733, Eastern District of Missouri

49. To date, none of those monies has been refunded or recouped by the Burkhardts. The monies were delivered into the custody and possession of the Defendants, who were acting in concert to further the fraud.

50. WHEREFORE, the Burkhardts demand their investment returned in the sum of $240,000, plus interest.

### AS AND FOR A SECOND CAUSE OF ACTION:
### BREACH OF CONTRACT, Oral & Written
### AGAINST DEFENDANTS: AUCTIONDINER.COM F/K/A BIDBAY.COM, GEORGE TANNOUS & AFFILIATES, INC., GEORGE TANNOUS, MIKE BURMAN, WESTER S. COOLEY.

51. Plaintiffs reassert and realleges paragraphs 1-50 as if fully set forth herein.

52. The Second Claim Defendants made oral representations that they would take the Issue public.

53. The Second Claim Defendants gave documents to the Burkhardts evidencing those representations. This documentation of the oral representations presents a documented ratification of the oral representations into documented representations.

54. The Burkhardts relied upon these representations, and in furtherance thereof, acted in accordance with the agreement by sending monies to Defendants in sum of $240,000 in exchange for stock that was going to be public.

55. The stock never went public.

56. WHEREFORE, the Plaintiff Burkhardts demand the amount of their investment returned, in the sum of $240,000.

## AS AND FOR A THIRD CAUSE OF ACTION: CONVERSION
### AGAINST ALL DEFENDANTS

57. Plaintiffs reassert and realleges paragraphs 1-56 as if fully set forth herein.

58. Defendants received $240,000 from the Plaintiffs for the aforementioned contemplated transaction.

59. Defendants then kept said monies under the Defendant's exclusive dominion and control and did not return said monies, even though they offered to return monies to other similarly situated parties.

60. By denying the Burkhardts their money returned and denial of any bargained for exchange, the Defendants have converted the Burkhardts property.

61. The Burkhardts are an elderly retired couple, and have suffered losses stemming from lack of capital, such as interest on said monies, and deprived of the use and enjoyment of those monies for things such as funding grandchildren's education, etc.

62. WHEREFORE, the Plaintiff Burkhardts demand the return of their investment of $240,000 and interest thereon at the New York statutory rate of interest of 9% (nine percent).

## AS AND FOR A FOURTH CAUSE OF ACTION: NEGLIGENCE PER SE – VIOLATION OF SECURITIES ACT §12 (a) (2) (a/k/a 15 U.S.C.A. §77I) – Civil Liabilities Arising ion Connection with Prospectus and Communications[1]
### AGAINST ALL DEFENDANTS[2]

63. Plaintiffs reassert and realleges paragraphs 1-62 as if fully set forth herein.

COMPLAINT – Burkar*. v.* AuctionDiner.com, *et al*

64. The Securities Act §12 (a) (2), in sum and substance, states that declarant of any untrue statement or omission of a material fact shall be liable to the person purchasing such security from him.

65. The Plaintiffs are in the class sought to be protected by the scope of the law.

66. The Defendants were in a position to know the status of any impending public issue.  The Defendants then made statements that the public issue was imminent, when they knew as a matter of fact that the public issuance was not imminent due to their prior problems with the Utah in Pennsylvania securities departments.

67. Therefore, the Defendants made statements that they knew were untrue in furtherance of their communication with the Burkhardts in direct violation of Securities Act section 12 (a) (2).

68. WHEREFORE, the Plaintiffs Burkhardts demand judgment in the amount of the consideration paid ($240,000) plus interest thereon as statutorily set forth.

### AS AND FOR A FIFTH CAUSE OF ACTION: NEGLIGENCE PER SE – VIOLATION OF SECURITIES ACT §17 (a) (a/k/a 15 U.S.C.A. §77q) – Fraudulent Interstate Transactions[3] AGAINST ALL DEFENDANTS

69. Plaintiffs reassert and realleges paragraphs 1-68 as if fully set forth herein.

70. The Securities Act §17 (a), in sum and substance, states that it shall be unlawful by the means instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, (1) to employ any device, scheme or artifice to defraud or (2) to obtain money or property by means of any

untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

71. The Plaintiffs are in the class sought to be protected by the scope of the law.

72. The Defendants were in a position to know, and indeed did know that the statements made to induce the Plaintiffs were untrue. Defendants also knew that they were engaged in a scheme or artifice to defraud the purchaser by reason of the Utah and Pennsylvania securities departments' regulatory actions against the Defendants.

73. The Defendants continued to make untrue statements to the Plaintiffs in furtherance of their scheme or artifice to defraud the Plaintiffs.

74. WHEREFORE, Plaintiffs demand judgment in the amount of $240,000, which represents their investment in the Defendants scheme to defraud.

### AS AND FOR A SIXTH CAUSE OF ACTION: NEGLIGENCE PER SE-VIOLATION OF SECURITIES ACT RULE 502 (B) (1) (a/k/a 17 C.F.R. 230.502)[4] – When Information Must be Furnished AGAINST ALL DEFENDANTS

75. Plaintiffs reassert and realleges paragraphs 1-74 as if fully set forth herein.

76. The Plaintiffs are an elderly retired couple living off of their investments. Under any stretch of the imagination the Plaintiffs could not be considered an accredited investor[5].

77. Securities Act rule 502 (d) (1), in sum and substance, states that the issuer must furnish to the purchaser such information as set out in Rule 502 of the Securities Act (a prospectus[6]).

78. The Plaintiffs are in the class sought to be protected by the scope of the law.

79. The Plaintiffs never received any information required under Rule 502. Therefore, the Defendants violated Securities Act Rule 502.

80. WHEREFORE, the Plaintiffs demand judgment in the sum of $240,000 and the complete rescission and unwinding of any purchase where the underlying prospectus was not delivered.

## AS AND FOR A SEVENTH CAUSE OF ACTION: NEGLIGENCE PER SE VIOLATION OF EXCHANGE ACT SECTION 10(b) (15 U.S.C.A. §78J(b))[7]
### Regulation of the Use of Manipulative and Deceptive Devices
#### AGAINST ALL DEFENDANTS

81. Plaintiffs reassert and realleges paragraphs 1-80 as if fully set forth herein.

82. Exchange Act Section 10 states, in sum and substance, that it shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails to (b) user employee in connection with the purchase or sell any registered on national securities exchange or any security not so registered any manipulative or deceptive device or contrivance in contravention of such rules as the commission may prescribe.

83. The Plaintiffs are in the class sought to be protected by the scope of the law.

84. Defendants made serious and material misstatements to the Plaintiffs concerning the materiality of when the issue would go public, if it would go public, and what price it would go public.

85. Defendants made the statements to the instrumentality of interstate commerce (telephone) and in the mails.

86. Defendants knew that the statements were false at the time that they were made by the Defendants due to the fact that they had no intention to sell the securities. This is evidenced by the Utah and Pennsylvania state securities departments barring the issue from registration in their states.

87. Therefore, the Defendants made false or misleading statements in violation of Exchange Act section 10 (b).

88. WHEREFORE, Plaintiffs demand judgment in the amount of $240,000.

## AS AND FOR AN EIGHTH CAUSE OF ACTION: NEGLIGENCE PER SE – VIOLATION OF EXCHANGE ACT RULE 10B-1 (a/k/a 17 C.F.R. 240 .10B-1)[8] Prohibition of Use of Manipulative or Deceptive Devices or Contrivances with Respect to Certain Securities Exempted from Registration AGAINST ALL DEFENDANTS

89. Plaintiffs reassert and realleges paragraphs 1-88 as if fully set forth herein.

90. Exchange Act Rule 10B-1, in sum and substance, states that it shall be unlawful use in manipulative or deceptive device or contrivance including any act or omission to act with respect to any security exempted from the operation of section 12 (a).

91. The Plaintiffs are in the class sought to be protected by the scope of the law.

92. Defendants employed manipulative or deceptive devices such as fraudulent representations and misleading prospectuses to induce Plaintiffs to purchase securities of multiple entities.

93. WHEREFORE, Plaintiffs demand judgment in the amount of $240,000 in the alternative to judgment precluded by exemption to section 12 (a).


**AS AND FOR A NINTH CAUSE OF ACTION: NEGLIGENCE PER SE
VIOLATION OF EXCHANGE ACT RULE 10B-5 (1-3) (10 C.F.R. 240.10B-5(1-3))[9]
Employment of Manipulative and Deceptive Devices
AGAINST ALL DEFENDANTS**

94. Plaintiffs reassert and realleges paragraphs 1-93 as if fully set forth herein.

95. Exchange Act Rule 10b-5, in sum and substance, state it shall be unlawful, directly or indirectly, employ any device, scheme, artifice to defraud, to make untrue statement of a material fact or to omit material fact.

96. The Plaintiffs are in the class sought to be protected by the scope of the law.

97. Defendants made untrue, misleading and deceptive statements to Plaintiffs regarding the alleged offering and alleged subsequent public listing.

98. Defendants made said statements to Plaintiffs in furtherance of their scheme to defraud investors.

99. Therefore, Defendants made such statements contrary to, and in violations of provisions 1-3 of Exchange Act Rule 10b-5.

100. WHEREFORE, Plaintiffs demand judgment in the sum of $240,000.


**AS AND FOR A TENTH CAUSE OF ACTION: NEGLIGENCE
AGAINST ALL DEFENDANTS**

101.   Plaintiffs reassert and realleges paragraphs 1-100 as if fully set forth herein.

102.   Defendants were under a duty to make truthful and accurate statements to Plaintiff, pursuant to Securities Act sections 12 (a) (2), §17 (a) and Securities Act Rule 502; Exchange Act Section 10(b), and Exchange Act Rules 10b-1 and 10b-5.

103.   Defendants made untrue statements and false representations regarding the nature and materiality of the security and the offering.

104.   Defendants either knew or should have known of the falsity of the untrue statements and false representations by virtue of the State of Utah and Pennsylvania's securities enforcements.

105.   The Defendants made such untrue statements and false representations to Plaintiffs to induce Plaintiffs to purchase the Issue in violation of said duties.

106.   Defendants untrue statements either directly caused or were the proximate cause of Plaintiffs making said investments.

107.   Plaintiffs justifiably relied on said statements, which served as a material inducement to purchase the security, by "investing" $240,000.

108.   Plaintiff suffered losses as a result of said induced conduct, as Plaintiffs are now a holder of worthless securities that never went public.

109.   WHEREFORE, Plaintiffs demand judgment in the amount of $240,000.

### AS AND FOR AN ELEVENTH CAUSE OF ACTION:
### IMPUTED CONTRIBUTORY NEGLIGENCE
### AGAINST ALL DEFENDANTS

110. Plaintiffs reassert and realleges paragraphs 1-109 as if fully set forth herein.

111. Defendants made untrue statements to Plaintiffs to induce Plaintiffs to purchase the Issue, either directly or indirectly.

112. Defendants were under a duty to fairly and accurately disclose information regarding AuctionDiner.com f/k/a BidBay.com and the issuance thereof, pursuant to various antifraud State and Federal antifraud rules, investor protection laws, Blue Sky laws, and Securities and Exchange Commission Acts and Rules.

113. Defendants violated this duty by sending untrue statements and making untrue statements to Plaintiffs to induce Plaintiffs to purchase the Issue.

114. Even assuming Defendants may not have known they were directly causing the Plaintiffs harm, they knowingly made statements that they knew to be untrue; thus being the proximate cause of the Plaintiffs harm, from either a principal position or an secondary accessory before, during and after the fact.

115. These accessory actions leads the Defendants to either have been principally liable or contributing to the negligence in concert, jointly and severally.

116. WHEREFORE, Plaintiff demands judgment in the amount of $240,000.

## RELIEF

WHEREAS, the Plaintiffs demand rescission and unwinding any all transactions and judgment for $2,640,000.00, plus interest as computed, based on the following allocations:

| | | |
|---|---|---|
| A. | SECURITIES FRAUD – | $240,000, plus interest |
| B. | BREACH OF CONTRACT – | $240,000 |
| C. | CONVERSION – | $240,000, plus interest |
| D. | NEGLIGENCE PER SE (Securities Act §12 (a) (2)) | $240,000 |
| E. | NEGLIGENCE PER SE (Securities Act §17 (a)) | $240,000 |
| F. | NEGLIGENCE PER SE (Securities Act Rule 502) | $240,000 |

COMPLAINT – Burkar... .. AuctionDiner.com, *et al*

| | | |
|---|---|---|
| G. | NEGLIGENCE PER SE (Exchange Act §10 (b)  ) | $240,000 |
| H. | NEGLIGENCE PER SE (Exchange Act Rule 10b-1) | $240,000 |
| I. | NEGLIGENCE PER SE (Exchange Act Rule 10b-5) | $240,000 |
| J. | NEGLIGENCE | $240,000 |
| K. | IMPUTED CONTRIBUTORY NEGLIGENCE | $240,000 |

**Sub Total**    **$2,640,000.00[2]**

## DAMAGES

117.    It is respectfully requested that any and all damages so ordered be increased by a ratio of 20:1.

118.    This is due to the fact that the representations made were on a share conversion rate of 20:1.

119.    Therefore, the damages based on the 10 claims aforementioned should be increased by a 20:1 ratio, thus totaling the combined demand at $52,800,000.00; or respectfully the 20:1 ratio be tallied on any judgment the Court orders.

WHEREAS, the Plaintiffs respectfully request such further relief as the Court may deem just and proper.


Dated: Carle Place, New York
         May 10, 2004


                                        Respectfully Submitted,



                                        Marshal Shichtman, Esq. (MDS 4012)
                                        Marshal Shichtman & Associates, P.C.
                                        *Attorney for Plaintiffs Phillip & Elsie*
                                        *Burkhardt*
                                        1 Old Country Road
                                        Suite 120
                                        Carle Place, New York 11514
                                        Tel 516.741.5222
                                        Fax 516.741.5212


TO:    Auction Diner f/k/a BidBay.com - 9911 Commerce Avenue, Tujunaga, California 91042
         George Tannous & Affiliates, Inc. - 7209 Foothill Boulevard, Tujunaga, California, 91042
         George Tannous - 7209 Foothill Boulevard, Tujunaga, California, 91042
         Jon Montgomery -
         Wester S. Cooley

---

[2] Plus interest on items A & C

L. Yvonne Hoek
Mike Burman - 401 North Brand Boulevard, No. 540, Glendale, California 91203
Jerry Lambert

---

Endnotes:

[1] Securities Act of 1933: civil liabilities arising in connection with prospectuses and communications - §12 "(a) Any person who... (2)offers or sells a security (whether or not exempted by the provisions of this section three, other than paragraphs (two) and (14) of subsection (a) thereof), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of material fact or omit to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise a reasonable care could not have known, of such untruth or omission, shall be liable, subject to subsection (B.) to the person purchasing such security from him, who may soon be there at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if you no longer owns the security."

[2] Securities Act §15 – liability of controlling persons: every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under section 11 or 12, shall also be liable jointly and severally with him to the same extent as such control person to any person in such control person is liable, unless the controlling person had had no knowledge ofare reasonable grounds to believe in the existence of the fax by reason of which the liability of the control person is alleged to exist."

[3] It shall be unlawful for any person in the offer or sale of any securities or any security base swap agreement (as defined in section 206 be a grand leach by Lee act) by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly- (1) to employ any device, steamed, or artifice to defraud, or (2) to obtain money or property by means of any untrue statement of a material fact or any a mission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

[4] Securities Act Rule 502 (D.) (one) when information must be furnished. If the issuer sells securities under rule 505-4506 to any purchaser that is not an accredited investor, the issuer shall furnish the information specified in paragraph (D.) (two) of this rule 50 to such purchaser a reasonable time prior to sale. The issuer is not required to furnish the specified information purchasers went sells securities under rule 504, or to any accredited investor.

[5] Securities Act Section 2 (a) definitions: (15) (II) any person who, on the basis of such factors as financial sophistication, net worth, knowledge, and experience in financial matters, or amount of assets under management qualifies as an accredited investor under the rules and regulations which the commission shall prescribe.
Also, Securities Act Rule 501 (a) (5) any natural person whose individual net worth, or joint net worth with that person spouse, at the time of his purchase exceeds $1 million; (6) any natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income at that person spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year.

[6] For further information on prospectuses see Securities Act rules 420 through 434.

[7] Exchange Act Section 10: it shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or any facility of any national securities exchange - (b) to use are employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities base swap agreement (as defined in section 206 be of the grand leach Bliley act), any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

[8] Exchange Act Rule 10b-1: determine that the Louisville or deceptive device or contrivance, as used in section 10 (D.) is hereby defined to include any act or omission to act with respect to any security exempted from the operation of section 12 (a) pursuant to a rule which specifically provides that this rule shall be applicable to such security, if such act or omission to act would have been unlawful under section 9 (8), or any rule or regulation heretofore or hereafter prescribed thereunder, if done or omitted to be done with respect to a security registered on a national securities exchange, and the use of any means or instrumentality of interstate commerce or of the mails or of any facility of any national securities exchange to you is or employee any such device or contrivance in connection with the purchase or sale of any such security is hereby prohibited.

[9] Exchange Act Rule 10b-5: employment of manipulative and deceptive devices - it shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or any facility of any national securities exchange, (1) to employ any device, steamed, or artifice to defraud; (2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading or; (3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person; in conjunction with the purchase or sale of any security.

# TABLE OF CONTENTS

SUMMONS ............................................................................................................1
COMPLAINT .......................................................................................................2
    Jurisdiction ....................................................................................................2
    Venue .............................................................................................................4
    Definitions .....................................................................................................4
    Allegations .....................................................................................................4
First Cause of Action: Securities Fraud ...........................................................10
Second Cause of Action: Breach of Contract ...................................................12
Third Cause of Action: Conversion ..................................................................13
Fourth Cause of action: Negligence Per Se – violation of
    Securities Act §12 (a) (2) (a/k/a 15 U.S.C.A. §77I) .......................................13
Fifth Cause of Action: Negligence Per Se – violation of
    Securities Act §17 (a) (a/k/a 15 U.S.C.A. §77q) ...........................................14
Sixth Cause of Action: Negligence Per Se – violation of
    Securities Act Rule 502 (B) (1) (a/k/a 17 C.F.R. 230.502) ...........................15
Seventh Cause of Action: Negligence Per Se – violation of
    Exchange Act §10 (b) (15 U.S.C.A. §78J(b)) ................................................16
Eighth Cause of Action: Negligence Per Se – violation of
    Exchange Act Rule 10B-1 (a/k/a 17 C.F.R. 230.10B-1) ................................17
Ninth Cause of Action: Negligence Per Se – violation of
    Exchange Act Rule 10B-5 (1-3) (a/k/a 10 C.F.R. 240.10B-5(1-3))................18
Tenth Cause of Action: Negligence ..................................................................18
Eleventh Cause of Action: Imputed Contributory Negligence .........................19
RELIEF...............................................................................................................20
DAMAGES .........................................................................................................21

# TABLE OF EXHIBITS

Cooley Letters..........................................................................................Exhibit A
BidBay Europe Prospectus ......................................................................Exhibit B
Purchases of Stock ..................................................................................Exhibit C
Certificates of Stock ...............................................................................Exhibit D
Yevonne Hoek's Letter ...........................................................................Exhibit E
Proof of non listing ..............................................................................Exhibit F
SB2/A.......................................................................................................Exhibit G
RW SB2/A/Deregistration........................................................................Exhibit H
Sale of Exchange ....................................................................................Exhibit I
File Index…….........................................................................................Exhibit J
St. Louis Business Journal…………………………………………...…….Exhibit K